## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHAD W. LUCKENBAUGH,<br>            Plaintiff | No. |
| v. | Civil Action – Law<br>(Electronically filed) |
| COUNTRY CLUB OF YORK PENNSYLVANIA,<br>            Defendant | Jury Trial Demanded |

### <u>COMPLAINT</u>

AND NOW, TO WIT, comes Chad W. Luckenbaugh by and through his

counsel, Solomon Z. Krevsky, Esq. and Krevsky Bowser, LLC, and files the following

Complaint:

### <u>INTRODUCTION</u>

1.     Plaintiff, Chad W. Luckenbaugh (hereinafter "Plaintiff" or "Luckenbaugh")

brings this action against Country Club of York Pennsylvania, (hereinafter

"Defendant" or "CCY") for claims involving violations of Plaintiff rights under the

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) *et seq*.

(hereinafter "Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. §955

*et seq*. (hereinafter "PHRA").

2.      Plaintiff's claims arise by virtue of sustained and egregious sexual misconduct and harassment perpetrated against Plaintiff by a high ranking managerial official, and Defendant's failure to exercise reasonable care to prevent, correct or remedy sexual harassment in the workplace.  The sexual misconduct and harassment caused Plaintiff to endure a hostile and abusive working environment.  Defendant CCY possessed actual knowledge that Plaintiff was being subjected to offensive and inappropriate sexual misconduct and harassment but ignored Plaintiff's complaints to managers and failed to act reasonably to implement effective corrective or remedial measures which, in combination with Defendant's retaliatory conduct, was the proximate cause of the constructive discharge of Plaintiff's employment.

3.      This action seeks to remedy violations of Plaintiff's civil rights and to redress harm caused by (a) the severe and pervasive sexual misconduct and harassment that permeated Defendant's workplace, (b) Defendant's knowledge of same but failure to act reasonably to prevent, correct or remedy unlawful sexual harassment, and (c) Defendant's discriminatory, harassing and retaliatory actions.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff is an adult male individual who, at all relevant times herein, resided in the Commonwealth of Pennsylvania, County of York.

5.      Defendant is a non-profit corporation registered to do business in the Commonwealth of Pennsylvania, and which regularly conducts business at 1400 Country Club Road, York, York County, Pennsylvania.

6.      Defendant CCY is a social club offering amenities such as swimming, golf, tennis, and dining services to its members and guests.  Defendant CCY opens its facilities to non-members to host events such as weddings, corporate events, or special occasions with venues that can accommodate up to four hundred people.

7.      Defendant solicits and advertises membership through its public website.

8.      Defendant hosts numerous national, state, and regional golf championships where participation in and attendance at the event is open to the public.

9.      At all relevant times hereto, Defendant served as Plaintiff's employer.

10.      At all relevant times hereto, Defendant was an "Employer" as that term is defined under and pursuant to Title VII and the PHRA.

11.      At all relevant times hereto, Plaintiff was assigned to work, and did work, at Defendant's facilities located at 1400 Country Club Road, York, York County, Pennsylvania.

12.     This Honorable Court has jurisdiction over Plaintiff's legal claims pursuant to 28 U.S.C. §1331 as this case arises under Title VII.  Moreover, this Court has jurisdiction over Plaintiff's PHRA claim pursuant to 28 U.S.C. §1367.

13.     Jurisdiction over Plaintiff's claims is appropriate in that Plaintiff satisfied all preconditions to the filing of this action by way of exhaustion of administrative remedies.  Plaintiff timely filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") which was dual-filed with the U. S. Equal Employment Opportunity Commission ("EEOC") and which alleged violations of Title VII and the PHRA.

14.     The PHRC issued a Right-to-Sue notice and, on February 9, 2022, Plaintiff received a Right-to-Sue notice issued by the EEOC.

15.     Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) as the facts and circumstances, actions and/or omissions alleged herein took place within this judicial district.

16.     At all relevant times hereto, Defendant acted through its agents, apparent agents, servants, apparent servants and/or employees who are authorized and acting within the scope of authority, course of employment, and/or under the direct control of Defendant.

**UNDERLYING FACTS**

17.     Plaintiff is an adult, heterosexual male.

18.     At all relevant times hereto, Plaintiff was a member of a class of individuals

protected against gender-based discrimination, harassment and/or retaliations

under and pursuant to Title VII and the PHRA.

19.     Plaintiff commenced employment with Defendant on or about September

1, 2009, as a kitchen intern.

20.     On account of Plaintiff's consistently solid performance, he was thereafter

promoted to a Banquet Chef position.

21.     At all relevant times hereto, all matters regarding compensation, terms,

conditions, rights and privileges of Plaintiff's employment were governed and

controlled by Defendant.

22.     During Plaintiff's initial term of employment, Greg Mummert ("Mummert")

served as Defendant's Executive Chef.

23.     As Defendant's Executive Chef, Mummert's essential job functions included

oversight of the daily operations of Defendant's multiple food and beverage

operations, ultimate authority to manage kitchen staff, and responsibility for food

quality and compliance with food safety regulations.

24.    Approximately six months after Plaintiff commenced employment with Defendant, he began to be subjected to sexually inappropriate conduct and remarks, and unwelcome and unwanted sexual advances by Mummert.

25.    Plaintiff opposed the sexually inappropriate conduct and remarks, and the unwelcomed and unwanted sexual advances by Mummert, but did not lodge a formal complaint with Defendant as he feared for the security of his employment with Defendant.

26.    However, in 2014 at least two of Plaintiff's co-employees lodged complaints to Defendant's management regarding the sexually inappropriate conduct and comments from Mummert generally and directed to Plaintiff in particular.

27.    Upon information and belief, Defendant conducted an investigation into the complaints by Plaintiff's colleagues concerning the sexually inappropriate conduct and comments from Mummert to Plaintiff.

28.    Upon information and belief, Defendant did not take steps to correct or remedy the sexually inappropriate conduct and comments from Mummert.

29.    Upon information and belief, at some point after Defendant completed its investigation into the complaints lodged by Plaintiff's co-employees, one of the employees who lodged the complaint was unceremoniously terminated.

30.    Plaintiff resigned his initial term of employment with Defendant in or around May 2015.

### *The Sexual Harassment*

31.    Plaintiff became reemployed by Defendant in or around October 2016.

32.    Although Plaintiff knew that Mummert was Defendant's Executive Chef, he sought a second term of employment with Defendant because he believed that the earlier complaints against Mummert of sexual misconduct and harassment, as well as a recent change in leadership at Defendant, would ensure that Plaintiff would not be exposed further to offensive sexual misconduct and harassment in the workplace by Mummert.

33.    Upon his return to work for Defendant in October 2016, Plaintiff performed duties as a Pantry Chef.

34.    At all relevant times hereto, Plaintiff was qualified to perform the duties associated with of his position and performed such duties in a satisfactory manner.

35.    However, Mummert again began to direct lewd and vulgar sexual remarks and unwelcome and unwanted sexual advances to Plaintiff including, but not limited to, the following:

    a.    Constantly making comments about Plaintiff's sexual organs;

b.      Constantly commenting about Plaintiff's penis and/or anus;

c.      Stating "How about my nuts in your mouth, Chad";

d.      Stating "How about a little five on one, Chad";

e.      Regularly referring to Plaintiff as a "homosexual";

f.      Spreading lies and untruths to Plaintiff's co-workers that Plaintiff is gay;

g.      Stating "Chad, do you have a drag queen mom?";

h.      Stating "Oh, Chad from behind";

i.      Stating "Chad, do you want to go camping?  We can get a little tent action going";

j.      Stating "Chad – you like two dicks in your mouth";

k.      Stating "Are you and Chuck going away this weekend and testing out the shocks in his Jeep";

l.      Stating "Did you give Chuck the bumper sticker on his Jeep that says, if you can read this roll me over?";

m.      Stating "Were you ever molested by a rabbi, and

n.      Talking about sharing a sleeping bag with him if they ever go camping.

36.   Plaintiff specifically opposed the sexual misconduct and harassment by

Mummert by stating to Mummert that he found the conduct unwelcome and

offensive, by explaining to Mummert that the sexual misconduct interfered with

Plaintiff's ability to perform his job, and by asking Mummert to refrain from

further such action.

37.   Mummert ignored Plaintiff's opposition and continued to subject him to

lewd and vulgar sexual misconduct and harassment.

38.   Defendant's Employee Handbook (revision date of May 2017) contains an

Equal Employment Opportunity policy which states:

> *2. CCY expressly prohibits any form of unlawful Employee harassment*
> *based on race, color, religion, sex, national origin, age, disability,*
> *status as a Vietnam-era or special disabled veteran, or status in any*
> *group protected by federal or state law.  Improper interference with*
> *the ability of CCY's Employees to perform their expected job duties is*
> *not tolerated.*
> *3.  With respect to sexual harassment, CCY prohibits the following:*
> *a. Unwelcome sexual advances, requests for sexual favors, and all*
> *other verbal or physical conduct of a sexual or otherwise offensive*
> *nature, including where:*
> - *Submission to such conduct is made either explicitly or*
>   *implicitly a term or condition of employment;*
> - *Submission to or rejection of such conduct is used as the basis*
>   *for decisions affecting an individual's employment; or*
> - *Such conduct has the purpose or effect of creating an*
>   *intimidating, hostile, or offensive working environment.*
> *b. Offensive comments, jokes, innuendos, and other sexually oriented*
> *statements.*

39.     Defendant's Employee Handbook (revision date of May 2017) describes a

workplace harassment complaint procedure as follows:

> *4. Complaint Procedure.*
> *a. Each member of management is responsible for creating an atmosphere free of discrimination and harassment, sexual or otherwise.  Further, Employees are responsible for respecting the rights of their co-workers.*
> *b. If an Employee experiences any job-related harassment based on sex, race, national origin, disability, or another factor, or the Employee believes that he/she has been treated in an unlawful, discriminatory manner, the Employee should promptly report the incident to his/her supervisor, who will investigate the matter and take appropriate action, including reporting it to the Club Manager. If the Employee believes it would be inappropriate to discuss the matter with his/her supervisor, the Employee may bypass the supervisor and report it directly to the Club Manager or the Chair of the Personnel Committee, who will direct that an investigation be conducted.*

### *Defendant Ignores Plaintiff's Complaints of Sex Harassment*

40.     On more than one occasion in 2017, Plaintiff lodged complaints with

Defendant's Food and Beverage Department Manager, Garrett Brown ("Brown"),

concerning Mummert's unabated and offensive sexual misconduct and

harassment.

41.     In 2017, Brown was Plaintiff's manager or in the immediate and successive

chain of command relative to Plaintiff.

42.     Among other things, Plaintiff informed Brown that he found Mummert's sexual misconduct to be unwelcome and offensive and that the conduct interfered with Plaintiff's ability to perform his job.

43.     Brown's response to Plaintiff's complaints was "Yeah, I hear ya.  I don't agree with it, but there's nothing that can be done." (or words to that effect).

44.     Brown possessed first-hand knowledge of Mummert's inappropriate sexual misconduct and harassment of Plaintiff and, on at least one occasion, was physically present when Mummert pointed directly at Plaintiff and called him "gay."  Brown replied to Plaintiff "gotta love it when your boss calls you gay."

45.     Brown informed Plaintiff that if Mummert's sexual misconduct and harassment bothered him, Plaintiff should find another job (or words to that effect).

46.     In effect, Brown directed Plaintiff to tolerate and endure the sexual misconduct and harassment by Mummert if Plaintiff wanted to remain employed by Defendant CCY.

47.     Upon information and belief, Brown did not take any action to advance Plaintiff's complaints of inappropriate sexual misconduct and harassment by Mummert, nor did Brown "investigate the matter and take appropriate action,

including reporting it to the Club Manager" as required by Defendant's workplace harassment complaint procedure.

48.     Upon information and belief, Defendant did not conduct an investigation into Plaintiff's complaints to Brown concerning inappropriate sexual misconduct and harassment by Mummert, nor did Defendant exercise reasonable to correct or remedy Mummert's conduct.

49.     Therefore, Plaintiff informed Sous Chef, Eric Donecker ("Donecker"), of the inappropriate sexual misconduct and harassment by Mummert and that he found Mummert's behavior unwelcome and offensive.

50.     As Sous Chef, Donecker was Plaintiff's manager or in the immediate and successive chain of command relative to Plaintiff.

51.     Plaintiff also told Donecker that Mummert was rude and that Plaintiff "could not believe" that Mummert would say certain things.

52.     Donecker did not inform Defendant's General Manager about the information Plaintiff reported to Donecker concerning Mummert's conduct.

53.     Mummert's sexual misconduct and harassment towards Plaintiff continued.

54.     Therefore, Plaintiff lodged follow-up complaints with Donecker concerning Mummert's sexual misconduct and harassment.

55.     Upon information and belief, Donecker did not take any action to advance Plaintiff's complaints of sexual misconduct and harassment by Mummert, nor did Donecker "investigate the matter and take appropriate action, including reporting it to the Club Manager" as required by Defendant's workplace harassment complaint procedure.

56.     Therefore, Plaintiff asked Donecker who he should speak with regarding the matter. Donecker identified Defendant's Controller, Robin Smith ("Smith"), as the person to speak with since she "handles human resource matters" (or words to that effect).

57.     Upon information and belief, Defendant did not conduct an investigation into Plaintiff's complaints to Donecker concerning sexual misconduct and harassment by Mummert, nor did Defendant exercise reasonable to correct or remedy Mummert's conduct.

58.     Therefore, on or about April 10, 2018, Plaintiff lodged a complaint with Smith concerning the sexual misconduct and harassment of Plaintiff by Mummert.

59.     At all relevant times hereto, Smith served as Defendant's *de facto* Human Resource Director.

60.     Among other things, Plaintiff informed Smith of the longstanding and

unabated sexual misconduct and harassment by Mummert and that he found

Mummert's behavior unwelcome and offensive.

61.     Among other things, Plaintiff informed Smith that he had lodged earlier

complaints of same with Brown and Donecker, and that no action had been taken

to correct or remedy Mummert's conduct.

62.     Among other things, Plaintiff informed Smith that because no action had

been taken to correct or remedy Mummert's inappropriate sexual misconduct

and harassment, Mummert continued to direct abhorrent sexual remarks to him

including recent examples of Mummert asking if Plaintiff was ever "molested by a

Rabbi" and if Plaintiff wished to go on a camping trip together so the two could

"share a sleeping bag."

63.     Among other things, Plaintiff told Smith that he learned he would not be

getting an appropriate raise, and that Plaintiff believed he was not getting the

raise because he was not receptive to and, in fact, opposed Mummert's sexual

misconduct and harassment.

64.     Among other things, Plaintiff also told Smith that there had been an

investigation conducted in 2014 after two employees lodged complaints of sexual

misconduct and harassment by Mummert perpetrated against Plaintiff.

65.    Nevertheless, Smith did not take action to advance Plaintiff's complaints of sexual misconduct and harassment by Mummert or otherwise take action to correct or remedy the conduct at issue.

66.    Instead, Smith advised Plaintiff, "It's just how some people are, and we have to deal with them." (or words to that effect).

67.    In effect, Smith directed Plaintiff that he must tolerate and endure the offensive sexual misconduct and harassment by Mummert.

68.    Defendant did not investigate the information Plaintiff shared with Smith during his April 10, 2018, meeting with her.

69.    Defendant did not take corrective or remedial measures based upon the information Plaintiff shared with Smith during his April 10, 2018, meeting with her.

70.    As a result of Defendant's repeated failure to investigate or remedy the inappropriate sexual misconduct and harassment by Mummert, Mummert was provided tacit authority by Defendant to continue to engage in offensive sexual misconduct and make inappropriate sexual remarks to Plaintiff.

71.    Accordingly, Mummert's sexual misconduct and harassment of Plaintiff continued to intensify.

72.     On February 19, 2019, Plaintiff lodged another complaint to Smith

concerning Mummert.  On that occasion, Plaintiff advised Smith that Mummert

continued to make sexually inappropriate comments to him on a daily basis, such

as Mummert asking Plaintiff if he enjoyed watching gay cat videos (which he had

not done), and by spreading false rumors to Plaintiff's colleagues that he was

watching gay cat videos while at work.

73.     In addition, Plaintiff reported to Smith that Mummert discouraged Plaintiff

from taking a vacation with threats of termination and shared a belief that

Mummert's threat was retaliatory stemming from Plaintiff's opposition to

Mummert's sexual misconduct and harassment.

74.     Smith requested that Plaintiff "give her some time" to resolve the dispute

between Plaintiff and Mummert.

75.     Upon information and belief, Smith informed Defendant's General

Manager, Brian Danehy ("Danehy"), about Plaintiff's concern over the threats of

termination relating to his vacation request.

76.     Upon information and belief, Smith did *not* inform Danehy about Plaintiff's

complaints over Mummert's sexual misconduct, harassment or retaliation.

77.    On March 1, 2019, Smith spoke with Plaintiff to report on the conversation she and Danehy had with Mummert about his handling of the Plaintiff's vacation request.

78.    However, Defendant did not conduct an investigation into Plaintiff's complaints to Smith concerning offensive sexual misconduct, harassment, or retaliation by Mummert, nor did Defendant exercise reasonable to correct or remedy same.

79.    As a result, Mummert was emboldened to continue to subject Plaintiff to offensive sexual misconduct, harassment, and retaliation.

80.    Over the next few weeks, Mummert's unwelcome sexual remarks became more vulgar and descriptive, including but not limited to the following:

    a.    On February 23, 2019, Mummert stated, "Chad is supposed to come up with one [salad], but instead he's looking up gay cat videos on his phone."

    b.    On February 27, 2019, Mummert stated, "Make sure you get some water in with those shrimp Chad, so they are nice and juicy like my booty, juicy like my booty, juicy like my booty."

c.   On February 28, 2019, Mummert stated, "We just noticed the shrimp
     looked like they didn't have any poop in them, which is a big boner
     for Chad."

d.   On March 2, 2019, Mummert stated, "Why don't you shove these up
     your ass Chad" as he was carrying two 3-gallon containers of ice
     cream.

e.   On March 8, 2019, Mummert stated in reference to tortillas, "These
     are super soft like Chad's pecker."

f.   On March 9, 2019, Mummert stated "Yeah, like shucking your anus,
     Chad" when discussing shucking oysters.

g.   On the same date, Mummert stated, "The bunghole outing, Chad,
     that's yours" when discussing golf events.

81.   As a direct and proximate result of the conduct described herein, Plaintiff

became emotionally distressed, fearful, and mentally tormented and sought

professional medical and/or mental health treatment.

82.   In a letter dated March 14, 2019, Plaintiff, through counsel, lodged yet

another complaint with Defendant concerning Mummert's sexual misconduct,

and Defendant's knowledge of same but inaction to remedy the hostile and

abusive work environment.  A true and correct copy of the letter is attached

hereto as Exhibit A.

83.     Upon information and belief, on or about March 19, 2019, Danehy and

Smith met with Mummert with instructions to "not make offensive comments to

Plaintiff" (or words to that effect).

84.     However, Mummert's sexual misconduct and harassment did not cease and

Mummert continued to subject Plaintiff to unwelcomed sexual remarks and

advances and offensive sexual conduct.

85.     Therefore, on or about March 29, 2019, Plaintiff met personally with

Danehy to inform that Mummert's offensive sexual remarks and conduct

continued unabated.  Plaintiff provided specific examples of conduct by

Mummert that Plaintiff considered offensive sexual misconduct and harassment.

86.     Danehy informed Plaintiff that he [Danehy] could not address Plaintiff's

concerns without involving Smith since "this is a personnel matter."

87.     On March 29, 2019, Danehy and Smith met with Plaintiff at which time he

provided, again, a detailed account of sexual misconduct and offensive sexual

remarks and harassment perpetrated by Mummert.

88.     Plaintiff also reiterated to Danehy and Smith that Plaintiff had reported

Mummert's sexual misconduct and harassment numerous times in the past to

various managers, including Smith, but that no action had been taken to correct or remedy the hostile and abusive work environment.

89.     During this meeting, Smith admitted to Plaintiff (in Danehy's presence) that she was aware of Mummert's sexual remarks and conduct as far back as March 2018 and that she "dropped the ball".

90.     On April 8, 2019, Mummert's employment with Defendant came to an end.

### *The Retaliation*

91.     In or about July 2019, Defendant hired Robert Parker as Defendant's Executive Chef.

92.     Parker knew that Plaintiff had engaged in legally protected activities by, among other things, opposing sexual harassment in the workplace and lodging multiple complaints of sexual misconduct and harassment against Mummert.

93.     Parker, acting separately or in combination with Smith and Danehy, began to retaliate against Plaintiff on account of Plaintiff's legally protected activities, including but not limited to the following:

     a.     Discouraging Plaintiff from taking time-off from work to provide care and support to his wife who was having surgery;

     b.     Discouraging Plaintiff from taking time-off from work to provide care and support to his wife for her second surgery;

c.      Providing gift cards to the entire kitchen staff except for Plaintiff;

d.      Subjecting Plaintiff's work to heightened and unreasonable scrutiny;

e.      Requiring Plaintiff to submit to a 12-panel drug test following a work-

related injury when such a test is not customarily required for

employees injured while in the course of scope of employment with

Defendant;[1]

f.       Failing or otherwise refusing to recall Plaintiff to work in July 2020

when Plaintiff's colleagues were recalled to work following a COVID-

related furlough in mid-March 2020;

g.      Failing or otherwise refusing to implement a salary increase for

Plaintiff upon his return to work following the COVID furlough while

most, if not all, of Plaintiff's colleagues were provided salary

increases upon their return to work following the COVID furlough;

h.      Demoting Plaintiff from Pantry Chef to Pantry Worker upon his

return to work following the COVID furlough (the "Demotion");

i.       Removal of Plaintiff's pantry management duties and responsibilities

as a result of the Demotion; and

_____

[1] Plaintiff passed the drug test without incident.

j.      Imposing discipline without any proper or legitimate basis.

94.     When Plaintiff questioned the basis for imposing the discipline, he was told by Smith and Parker that "You are not a team player. . ."

95.     The Demotion resulted in a material decrease in Plaintiff's duties and responsibilities and served to marginalize or remove his authority within Defendant's organization.

96.     Defendant did not provide Plaintiff any explanation or business justification for the Demotion.

97.     In fact, Defendant did not possess a valid justification to demote Plaintiff from Pantry Chef to Pantry Worker, or issue discipline upon him.

98.     Accordingly, Plaintiff believes and therefore avers that the Demotion and discipline were undertaken with a specific intent to retaliate against Plaintiff for engaging in legally protected activities as more fully described above.

99.     The Demotion and discipline constituted adverse employment actions by Defendant.

100.    The Demotion and discipline were implemented without proper basis and in a discriminatory and retaliatory manner.

101.    The unlawful retaliation, as more fully described above, was sufficiently severe and pervasive such that the work environment became so caustic, toxic,

and intolerable as to compel Plaintiff to involuntarily separate his employment

with Defendant ("Constructive Discharge") in August 2021.

102.   The Constructive Discharge of Plaintiff's employment was the result of

Defendant's official actions or inactions, as more fully described above.

103.   The Constructive Discharge of Plaintiff's employment in response to the

unabated sexual misconduct, Defendant's failure to effectively investigate or

remedy same, the subsequent Demotion and discipline, and other discriminatory

and retaliatory conduct by Defendant was reasonable given the totality of the

circumstances.

104.   The Constructive Discharge of Plaintiff's employment constitute adverse

employment actions by Defendant.

### COUNT I
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq.
*CHAD W. LUCKENBAUGH V. COUNTRY CLUB OF YORK PENNSYLVANIA*
### SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT

105.   Plaintiff incorporates the previous allegations here, and incorporates herein

by reference, as though fully set forth at length.

106.   Title VII prohibits discrimination and harassment in the workplace on

account of sex.

107.   Plaintiff is an adult heterosexual male who is a member of a class of individuals protected under Title VII against sex-based harassment and discrimination.

108.   At all relevant times hereto, Mummert served as a managerial agent for Defendant.

109.   At all relevant times hereto, Defendant owed a duty to its employees, including Plaintiff, to provide a workplace free from sex harassment and discrimination.

110.   Defendant was aware of its duty to provide a workplace free from sex harassment and discrimination.

111.   By virtue of Plaintiff's multiple reports of offensive sexual misconduct and harassment, Defendant knew or should have known that Plaintiff was alleged to have been subjected to offensive sexual misconduct, harassment and abuse.

112.   Mummert was aided in accomplishing the unlawful sexual harassment perpetrated against Plaintiff by virtue of Mummert's role as a managerial agent for Defendant.

113.   Despite Defendant's knowledge of the sexual misconduct and harassment by Mummert, it failed to exercise reasonable care to prevent him subjecting Plaintiff such conduct in the workplace.

114.   In addition, Defendant failed to exercise reasonable case to correct and/or remedy the unlawful sex harassment, as more fully described above.

115.   As a result of Defendant's failure to exercise reasonable care to prevent, correct and/or remedy the unlawful sex harassment, Mummert was provided tacit authority by Defendant to engage in unlawful sexual harassment in the workplace.

116.   The sexual misconduct, harassment and abuse was sufficiently severe and pervasive to detrimentally alter the terms and conditions of Plaintiff's employment create for Plaintiff a hostile and abusive working environment.

117.   The unlawful sex harassment, as more fully described above, was uninvited, unwelcomed and unwanted by Plaintiff.

118.   The unlawful sexual harassment, as more fully described above, was offensive to Plaintiff and would have been offensive to a reasonable person under similar circumstances.

119.   Defendant's policies and/or practices with respect to prevention and/or correction of sex harassment, if any, were utterly deficient and inadequate to prevent, correct and/or remedy unlawful sex harassment in the workplace.

120.   As a result, Defendant's employees, and in particular Plaintiff, were forced to endure sexually inappropriate conduct and remarks, and unwelcome and unwanted sexual advances and abuse as a condition of employment.

121.   As a direct and proximate result of Defendant's actions and omissions, as more fully described above, Plaintiff has sustained extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

122.   As a direct and proximate result of Defendant's actions and omissions, as more fully described above, Plaintiff has sustained an impairment of earning power and earning capacity, and claim is made therefor.

123.   The actions and/or omissions of Defendant, as more fully described above, were extreme and outrageous, egregious, and undertaken with malice, with the direct intent to harm Plaintiff, and/or with callous disregard for Plaintiff's well-being, and with reckless indifference to Plaintiff's statutorily protected rights.

124.   Defendant engaged in no good faith effort to comply with the law or Plaintiff's civil rights, and Plaintiff is thereby entitled to punitive damages, and claim is made therefor.

125.   Plaintiff is further entitled to recover reasonable attorney fees and litigation expenses pursuant to Title VII, and claim is made therefor.

## COUNT II
## Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq.
## CHAD W. LUCKENBAUGH V. COUNTRY CLUB OF YORK PENNSYLVANIA
## Retaliation
## Demotion and Constructive Discharge

126.   Plaintiff incorporates the previous allegations here, and incorporates herein by reference, as though fully set forth at length.

127.   Title VII prohibits retaliation against employees who have complained of sex harassment in the workplace, opposed unlawful acts, and/or lodged good faith complaints of unlawful harassment or discrimination.

128.   As more fully described above, Plaintiff opposed and/or rejected the sexual misconduct, harassment and abuse advising Mummert that he found the conduct offensive and inappropriate and requesting that it cease.

129.   At all relevant times hereto, Plaintiff possessed a good faith belief that Mummert's sexual misconduct, harassment and abuse was unlawful.

130.   In addition, as noted above, Plaintiff lodged multiple complaints of sexual misconduct, harassment and abuse by Mummert.

131.    Further, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC") alleging hostile work environment sex harassment.

132.    The PHRC notified Defendant in a letter dated September 9, 2019, that Plaintiff filed his Complaint.

133.    Plaintiff's opposition to Defendant's sex harassment, his many complaints of same, and his filing of a Complaint with the PHRC and EEOC constitutes legally protected activities.

134.    Defendant owed a duty to its employees, including Plaintiff, to provide a workplace free from retaliation against those who engage in legally protected activities.

135.    Plaintiff was subjected on a regular basis to unlawful retaliation, as more fully described above, including the specific allegations of retaliation described in Paragraph 93.a. through 93.j.

136.    The retaliation contributed to the hostile work environment in which Plaintiff was forced to work, interfered with Plaintiff's ability to perform his job, and resulted in tangible adverse employment actions and/or the loss of tangible employment benefits, as more fully set-forth above.

137.   The unlawful retaliation, as more fully described above, detrimentally affected the terms and conditions of Plaintiff's employment.

138.   The unlawful retaliation, as more fully described above, was such that a reasonable employee would have found Defendant's actions materially adverse and otherwise dissuade a reasonable employee from filing a discrimination or harassment complaint or engage in other legally protected activity.

139.   The unlawful retaliation, as more fully described above, resulted in adverse employment action including, but not limited to, the Constructive Discharge of Plaintiff's employment in August 2021.

140.   The Constructive Discharge of Plaintiff's employment was the result of Defendant's official action or inaction, as more fully described above.

141.   Defendant caused the Constructive Discharge of Plaintiff's employment in retaliation for his multiple complaints of sexual misconduct, harassment and abuse and other legally protected activities.

142.   The Constructive Discharge of Plaintiff's employment constitutes adverse employment action.

143.   Plaintiff's response to the caustic and intolerable workplace resulting in the Constructive Discharge of Plaintiff's employment was reasonable given the totality of the circumstances.

144.   As a direct and proximate result of Defendant's actions and omissions, as more fully described above, Plaintiff has suffered and will continue to suffer loss of employment, lost wages and benefits, and future lost wages and benefits, and claim is made therefor.

145.   As a direct and proximate result of Defendant's actions and omissions, as more fully described above, Plaintiff has sustained extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

146.   As a direct and proximate result of Defendant's actions, as more fully described above, Plaintiff has sustained an impairment of earning power and earning capacity, and claim is made therefor.

147.   The actions and/or omissions of Defendant, as more fully described above, were extreme and outrageous, egregious, and undertaken with malice, with the direct intent to harm Plaintiff, and/or with callous disregard for Plaintiff's well-being, and with reckless indifference to Plaintiff's statutorily protected rights.

148.   Defendant engaged in no good faith effort to comply with the law or Plaintiff's civil rights, and Plaintiff is thereby entitled to punitive damages, and claim is made therefor.

149.   Plaintiff is further entitled to recover reasonable attorney fees and

litigation expenses pursuant to Title VII, and claim is made therefor.

<u>**COUNT III**</u>
**Pennsylvania Human Relations Act, 43 P.S. §§951 et seq**
*CHAD W. LUCKENBAUGH V. COUNTRY CLUB OF YORK PENNSYLVANIA*
**Harassment, Discrimination, and Retaliation**

150.   Plaintiff incorporates the previous allegations here, and incorporates herein

by reference, as though fully set forth at length.

151.   The acts and/or omissions identified above and incorporated herein by

reference violate the Pennsylvania Human Relations Act, 43 P.S. §951 et seq.

152.   As a direct and proximate result thereof, Plaintiff has sustained damages as

more fully described above and incorporated herein by reference, and claim is

made therefor.

**WHEREFORE**, Plaintiff Chad W. Luckenbaugh respectfully requests this

Honorable Court to enter judgment in his favor and against Defendant for:

A.   Back pay and benefits;

B.   Front Pay and benefits;

C.   Statutory prejudgment interest;

D.   Emotional distress and other compensatory damages;

E.   Punitive damages;

F.    Reasonable attorney fees and litigation costs;

G.    An Order prohibiting Defendant, its officers, successors and assigns, and all

persons in active concert or participation with it from engaging in sexual

harassment, discrimination, disparate treatment, constructive discharge

and any other employment practice which discriminates on the basis of sex;

H.    An Order prohibiting Defendant, its officers, successors and assigns, and all

persons in active concert or participation with it from engaging in

retaliation against those who engage in legally protected activities;

I.    An Order requiring Defendant to institute and carry out policies, practices

and programs to eradicate the effects of past and present unlawful

employment practices;

J.    An Order requiring Defendant to institute and carry out a complaint

procedure which encourages employees to come forward with complaints

regarding violations of its policies against workplace discrimination and

harassment, and to be able to do so without fear of reprisal or retaliation;

K.    An Order requiring Defendant to institute and carry out a training program

which shall promote supervisor accountability, imposing on all managers

and supervisory personnel a duty to actively monitor the work area to

ensure compliance with policies on non-discrimination and harassment;

and requiring all managers and supervisors to report any incidents and/or

complaints of harassment and/or retaliation of which they become aware

to the department charged with handling such complaints; and

L.    Any other relief that this Court deems just and equitable.


                              Respectfully submitted,

                              KREVSKY BOWSER, LLC

                    By:    s/*Solomon Z. Krevsky*
                              Solomon Z. Krevsky, Esq.
                              *Attorney for Plaintiff*
                              Supreme Ct. I.D. #72719
                              20 Erford Road, Suite 300A
                              Lemoyne, PA 17043
                              (717) 731-8600
                              skrevsky@krevskybowser.com